```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TENNESSEE
                          WESTERN DIVISION
```

BOBBY TOWNS,

    Petitioner,

vs.                                              No. 05-2816-B/V

BRUCE PEARSON,

    Respondent.

```
                   ORDER CORRECTING THE DOCKET
             ORDER GRANTING RESPONDENT'S MOTION TO DISMISS
             ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2241
               ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
                                  AND
                    NOTICE OF APPELLATE FILING FEE
```

Petitioner Bobby Towns, Bureau of Prisons ("BOP") inmate registration number 05699-025, who is currently an inmate at the Federal Correctional Institution in Terre Haute, Indiana, filed a pro se petition pursuant to 28 U.S.C. § 2241 on October 31, 2005 concerning a disciplinary charge incurred during his confinement at the Federal Correctional Institution in Memphis, Tennessee ("FCI-Memphis").[1] The Court issued an order on November 4, 2005 directing the Petitioner, within thirty days, to file a properly completed in forma pauperis affidavit or pay the habeas filing fee. The Petitioner paid the habeas filing fee on November 15, 2005. The Court issued an order on December 7, 2005 directing the Respondent

---

[1] In order to facilitate the delivery of the Petitioner's mail, the Clerk is ORDERED to correct the docket to reflect his current address.

to file a response to the petition. On December 28, 2005, Respondent filed a motion to dismiss or, in the alternative, for summary judgment, accompanied by a legal memorandum. Petitioner did not respond to the motion.

This case involves a disciplinary write-up the Petitioner received for fighting. The facts appear to be as follows:[2]

1. Towns is a federal prisoner who was convicted in the United States District Court for the Southern District of Illinois of violations of 21 U.S.C. §§ 844(a) and 851(a). He was sentenced on April 15, 2002 to one hundred fifteen (115) months, to be followed by three years of supervised release. Towns arrived at FCI-Memphis on May 13, 2002. (Declaration of Denise Gottlieb, dated Dec. 23, 2005 ("Gottlieb Decl."), Att. A.[3])

2. On June 26, 2002, an officer witnessed Towns and another inmate in a physical altercation. Officer Mitchell wrote an incident report charging Towns with fighting with another person. (Gottlieb Decl., Att. B.)[4] That report described the incident as follows:

> On the above date and time, I (SCO Mitchell) witnessed inmate Young #16251-076 arguing with inmate Towns #05699-025. As I approached the two inmates, inmate Young #16251-076 struck inmate Towns #05699-025 on the left side of the head. I (SCO Mitchell) then gave the order to "STOP" and pushed my B.A. for further assistance. Both inmates began to fight, falling to the ground. I (SCO Mitchell) agian [sic] gave the order to "STOP" I then was able to grab inmate Towns right arm and was able to

---

[2]  Although the Petitioner has not responded to the statement of undisputed facts submitted by the Respondent, the Court has attempted, by examining the petition, to identify the areas of factual agreement.

[3]  The Gottlieb Declaration is attached as Exhibit 1 to the Memorandum in Support of Respondent's Motion to Dismiss or in the Alternative for Summary Judgment, filed Dec. 28, 2005 ("R. Br.").

[4]  The petition indicates that the second inmate was also charged with fighting.

2

        keep them from further altercation until assistance arrived.

3. On June 26, 2002, Towns was taken to the Special Housing Unit ("SHU") pending investigation. (Petition ("Pet.") at 3.)[5]

4. On June 26, 2002, Lieutenant Hess gave Towns a copy of the incident report. (Gottlieb Decl., Att. B, pp. 1-2.)[6]

5. On June 26, 2002, Lieutenant Hess investigated the incident report. (Pet., pp. 2-3.)[7]

6. On June 28, 2002, the initial hearing was conducted by the Unit Discipline Committee ("UDC"), which referred the charges to a Discipline Hearing

---

[5] Although Respondent cites Attachment C to the Gottlieb Declaration, he has not provided sufficient information to permit the Court to decipher the codes used in that computer printout.

[6] Respondent asserts that, on June 26, 2002, Lieutenant Hess read Towns his rights and Towns stated that he understood his rights. Those assertions do not appear to be supported by Attachment B to the Gottlieb Declaration. The second page of that attachment indicates that Towns was advised of his rights before the Disciplinary Hearing Officer ("DHO") by Case Manager L. McNeil on June 28, 2002.

    Pursuant to BOP policy,

> when staff witnesses or has a reasonable belief that a violation of Bureau regulations has been committed by an inmate, and when staff considers informal resolution of the incident inappropriate or unsuccessful, staff shall prepare an Incident Report and promptly forward it to the appropriate Lieutenant. Except for prohibited acts in the Greatest or High Severity Category, the Lieutenant may informally dispose of the Incident Report or forward the Incident Report for investigation consistent with this section. . . . Only the DHO may make a final disposition on a prohibited act in the Greatest Severity Category or on a prohibited act in the High Category (when the High Category prohibited act has been committed by a VCCLEA inmate rated as violent or by a PLRA inmate).

28 C.F.R. § 541.14(a) (2005). The offense of fighting with another person (Category 201) is a High Category offense. Id., § 541.13, Table 3. Towns is a PLRA inmate, having been sentenced for an offense committed on or after April 26, 1996. Id., § 541.13(a)(1). Pursuant to 28 C.F.R. § 541.14(b)(2), the inmate is to receive a copy of the Incident Report. The investigator is to read the charges to the inmate, advise him of his rights, and ask for his statement concerning the incident. Id.

[7] Although the documents submitted by Respondent do not explicitly state that Lieutenant Hess investigated the incident report, the regulations provide that incident reports should be promptly investigated. 28 C.F.R. § 541.14(b)(2) ("The investigator shall then thoroughly investigate the incident.").

      Officer ("DHO") for further hearing due to the seriousness of the offense and Towns's admission that he struck the other inmate. (See Gottlieb Decl., Att. B, p. 1.)[8] Petitioner also received his "Inmate Rights of Discipline Hearing" and "Notice of Disciplinary Hearing Before the DHO." (Id. at pp. 5-6.)[9]

7. On July 9, 2002, a disciplinary hearing was held before the DHO. Towns was found guilty based on the evidence presented, which consisted of the Incident Report and his admission. (Gottlieb Decl., Att. B, pp. 2-4.) Towns received thirty (30) days of disciplinary segregation and a loss of twenty-seven (27) days good conduct time, but the disciplinary segregation was suspended pending one hundred eighty (180) days of clear conduct. (Id. at p. 4.)

8. In November, 2004, Towns filed a Freedom of Information Act ("FOIA") request for a copy of the August, 2004 memo from Office Mitchell to Associate Warden Taylor. (Gottlieb Decl., Att. D.)

9. On December 14, 2004, BOP sent the prisoner the requested memo. (Gottlieb Decl., Att. D.)

10. On January 1, 2005, Towns filed a Request for Administrative Remedy, Remedy ID No. 364489-R1, with the Mid-Atlantic Regional Office of the BOP. This Request was accepted for consideration. On March 7, 2005, the administrative remedy appeal was denied, finding the required disciplinary procedures were substantially followed. (Pet., Exs. F & G.)

11. On June 29, 2005, Towns appealed his Regional Administrative Remedy to the BOP's Central Office, Administrative Remedy No. 364489-A4. That office responded to the appeal on August 24, 2005, finding that the required disciplinary procedures were substantially followed and that the greater weight

---

    [8] A hearing by a UDC is contemplated by the regulations, 28 C.F.R. § 541.15, and, as previously noted, because Towns is a PLRA inmate charged with a High Category offense, see supra p. 3 n.6, the final disposition of the Incident Report must be made by a DHO.

    [9] The regulations also provide that the inmate should be advised of his rights before the DHO, id., § 541.15(I), which apparently happened in this case, Gottlieb Decl., Att. B, p. 2.

of the evidence supported the DHO's decision. (Pet., Ex. H.)

In his petition, Towns challenges his disciplinary conviction on the ground that he did not strike the other inmate but, rather, wrapped his arms around him to prevent him from continuing to fight. After his DHO hearing, Towns obtained a written statement from Officer Mitchell that appears to corroborate his version of events. Towns asserts that the disciplinary conviction has had a continued effect on his custody level, preventing a transfer to a lower-security facility. The Petitioner asks that his disciplinary conviction be expunged and that he be awarded the lost good time credit.

Although Towns appears to argue that he is actually innocent of the disciplinary offense, this Court is not authorized to conduct a <u>de</u> <u>novo</u> review of the evidence presented at the disciplinary hearings. Instead, this Court must determine whether the hearing afforded the Petitioner satisfies the requirements of due process. In <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), the Supreme Court held that, where a prisoner is charged with a disciplinary offense that may result in loss of good time credit, due process requires (I) written notice of the charges at least twenty-four (24) hours prior to the hearing, <u>id.</u> at 563-64; (ii) the opportunity to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," <u>id.</u> at 566; and (iii) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action, <u>id.</u> at

5

564. Moreover, "revocation of good time does not comport with 'the minimum requirements of procedural due process' . . . unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent, Massachusetts Correctional Instit., Walpole v. Hill, 472 U.S. 445, 454 (1985); see also id. at 455-57.

Respondent's brief sets forth the procedures that were followed in Towns's disciplinary hearings and explains why those procedures satisfy the standards articulated in Wolff. See R. Br. at 2-5, 9-11; see also 18 U.S.C. § 4042(a)(3) (authorizing BOP to discipline prisoners); 28 C.F.R., Part 541 (disciplinary procedures). It is not necessary to analyze those procedures at length, because Towns does not contend that the requirements of Wolff were not satisfied.

Instead, Towns's argument that he was only protecting himself from another inmate appears to be a challenge to the sufficiency of the evidence presented at his disciplinary hearing. The DHO summarized the evidence presented at the hearing:

> The Disciplinary Hearing Officer finds that, on June 26, 2002, at approximately 1:05 p.m., in the Shelby-B unit Common Area you committed the prohibited act of fighting with another person by getting into a physical altercation [with] another inmate with a closed fist.
>
> This finding is based on your statement and the written statement of Officer Mitchell, who reports that at 1:05 p.m. on June 26, 2002, in the Shelby-B Unit Common Area he observed you and inmate Young #16251-076 arguing. As he approach[ed] the two of you he saw inmate Young strike you on the left side of your head. He gave the order to stop but both of you continued to fight, falling to the ground. He was able to grab your arm to prevent you two from fighting more until additional staff arrived.

> At the DHO hearing, you stated, "I called inmate Young, Fat Boy and he went off. He struck me and I grabbed him and we fell to the floor. When the police put their hand on my shoulder I let go."
>
> Therefore, based on your statement and the incident report as written, I found that you committed the prohibited act of fighting with another person.

Gottlieb Decl., Att. B, p. 3. The DHO relied on the written statement of Officer Mitchell, who described the incident in detail.[10] In particular, the officer's statement reported that (i) he observed an argument between Towns and another inmate; (ii) the inmates continued fighting after Officer Mitchell twice ordered them to stop; and (iii) Officer Mitchell had to physically restrain Towns to halt the fight. The DHO also relied on Towns's statement that "I called inmate Young, Fat Boy and he went off. He struck me and I grabbed him and we fell to the floor. When the police put their hand on my shoulder I let go." Gottlieb Decl., Att. B, p. 2.[11] The decision of the DHO is supported by "some evidence" and, therefore, the requirements of due process have been satisfied.

Towns does not dispute that sufficient evidence was presented to the DHO to convict him of fighting. Instead, he launches a collateral attack on his disciplinary conviction based on a memorandum prepared by Officer Mitchell in July, 2004 at the request of Towns. That memorandum states:

> This memo is in reference to the incident that occurred on 6/26/02 between inmate Towns #05699-025 and Inmate

---

[10] Officer Mitchell's incident report is set forth at pp. 2-3, supra.

[11] The statement cited in Respondent's brief, that "he hit me first, so I had no choice," was made before the UDC, see Gottlieb Decl., Att. B, p. 1, and was not explicitly relied on by the DHO.

7

>   [redacted] (reg. # unavailable). As Officer of Shelby-B
>   unit at the time, I was exiting the officers station when
>   I heard inmate [redacted] shouting at Towns. I proceeded
>   to walk to their location when inmate [redacted] struck
>   inmate Towns on the head area. I began to instruct the
>   inmates to Stop. Inmate [redacted] came at inmate Towns
>   again. Inmate Towns then wrapped his arms around inmate
>   [redacted][.] I then separated the two inmates and
>   awaited responding staff. At no time did inmate Towns
>   #55699-025 defend himself by striking back. Inmate Towns
>   only grabbed inmate [redacted] to prevent any further
>   injury to himself. I was then instructed by the
>   Operations Lt. on shift to write an incident report on
>   both as fighting. Inmate Towns contacted me by stopping
>   me as I was coming to work in Special Housing Unit and
>   informed me that he has been trying to contact me for a
>   while about the incident. I have been in Special Housing
>   Unit for close to a year and a half on different shifts
>   in which it may be hard to contact me.

Gottlieb Decl., Att. D, p. 3.

As Respondent has pointed out, Officer Mitchell's July, 2004 memorandum, prepared two years after the incident, does not warrant overturning Towns's disciplinary conviction. Hill establishes that the decision of the DHO must be supported by "any evidence in the record." 472 U.S. at 455. The July, 2004 memorandum was not introduced at the disciplinary hearing and, although Towns was aware of the content of Officer Mitchell's incident report prior to the hearing, he does not explain his failure to call the officer as a witness at the disciplinary hearing. See Gottlieb Decl., Att. B, p. 2 (noting that Towns did not request any witnesses). A disciplinary conviction cannot be overturned on the basis of evidence that was not presented at the hearing. Hamilton v. O'Leary, 976 F.2d 341, 346 (7th Cir. 1992).

Moreover, Towns would not be entitled to relief even if the more recent version of Officer Mitchell's observations were

8

presented at the disciplinary hearing. Towns admits he provoked the other inmate by calling him "Fat Boy," leading to a physical altercation.[12]

For all the foregoing reasons, the Court GRANTS Respondent's motion for summary judgment. The petition is without merit and is DISMISSED.

Appeals of habeas petitions under 28 U.S.C. § 2254 and motions under 28 U.S.C. § 2255 are governed by 28 U.S.C. § 2253 and require the district court to consider whether to issue a certificate of appealability. Stanford v. Parker, 266 F.3d 342 (6th Cir. 2001); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063 (6th Cir. 1997). Section 2253 does not apply to habeas petitions by federal prisoners under § 2241. McIntosh v. United States Parole Comm'n, 115 F.3d 809, 810 (10th Cir. 1997); Ojo v. Immigration & Naturalization Serv., 106 F.3d 680, 681-82 (5th Cir. 1997); Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir. 1996). Nevertheless, a habeas petitioner seeking to appeal is still obligated to pay the $455 filing fee required by 28 U.S.C. §§ 1913 and 1917.[13] Under the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915, it

---

[12]   Although it is not called upon to weigh conflicting evidence and resolve questions of credibility, Hill, 472 U.S. at 455, the Court notes that, contrary to Towns's suggestion, Officer Mitchell's 2004 memorandum does not say that the lieutenant directed him to falsify the incident report, see Pet. at 5-6. Instead, Officer Mitchell's memorandum is consistent with the statement allegedly made to the Petitioner by the UDC hearing officer that "by policy, 'no matter what happened, if the inmate didn't run away or get into the fetus position, it constituted that I was fighting.'" Id. at 3.

[13]   Effective April 9, 2006, the appellate filing fee increased from $255 to $455.

is unclear how habeas petitioners establish a right to proceed in forma pauperis and avoid this filing fee.

Although the Sixth Circuit has concluded that the various filing fee payment requirements and good faith certifications of amended § 1915 do not apply to § 2254 cases, it has not resolved whether those requirements apply to § 2241 cases. Kincade v. Sparkman, 117 F.3d 949, 951-52 (6th Cir. 1997); cf. McGore v. Wrigglesworth, 114 F.3d 601 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases, without mentioning § 2241 petitions).

The Tenth Circuit, however, has held that the provisions of the PLRA do not apply to habeas cases of any sort or to § 2255 motions. See McIntosh, 115 F.3d at 810; United States v. Simmonds, 111 F.3d 737, 743 (10th Cir. 1997). An unpublished Sixth Circuit opinion has adopted this approach in affirming a decision from this district. Graham v. United States Parole Comm'n, No. 96-6725, 1997 WL 778515 (6th Cir. Dec. 8, 1997), aff'g Graham v. United States, No. 96-3251-Tu (W.D. Tenn. Dec. 4, 1996). Because the Court finds the reasoning of McIntosh persuasive, and because this conclusion naturally follows from the Sixth Circuit's decision in Kincade, the Court concludes that the PLRA does not apply to § 2241 petitions. Cf. Greene v. Tennessee Dep't of Corrections, 265 F.3d 369 (6th Cir. 2001) (certificate of appealability requirement is applicable to state prisoner bringing § 2241 petition).

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to

appeals of orders denying habeas petitions. Kincade, 117 F.3d at 951. Rather, to appeal in forma pauperis in a habeas case, and thereby avoid the $455 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. See Fed. R. App. P. 24(a)(4)-(5).

      In this case, for the same reasons the Court granted Respondent's motion for summary judgment, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal in forma pauperis is DENIED. Accordingly, if Petitioner files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

      IT IS SO ORDERED this 13th day of September, 2006.

                                       s/ J. DANIEL BREEN
                                       UNITED STATES DISTRICT JUDGE